823

H. D. MAXWELL and Josephine E. Maxwell, husband and wife, and Oswald Thomas and Harriet S. Thomas, husband and wife, Plaintiffs,

v.

W. E. FRANK, District Director of Internal Revenue, Defendant.

No. 2361.

United States District Court
W. D. Washington, S. D.

Feb. 15, 1960.

Richard F. Alden, Los Angeles, Cal., Reuben C. Carlson and John J. Reha, Jr., Carlson, Newlands, Reha & Sinnitt, Watkins, Lund & Peck, Tacoma, Wash., for plaintiffs.

Charles P. Moriarty, U. S. Atty., Seattle, Wash., Charles Billinghurst, Asst. U. S. Atty., Tacoma, Wash., Thomas Frazier, Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendant.

BOLDT, District Judge.

The above-entitled cause having come on regularly for trial before the Honorable George H. Boldt, United States District Judge presiding, sitting without a jury, on December 16, 17 and 18, 1959, the plaintiffs represented by their attorneys, Carlson, Newlands, Reha & Sinnitt by Reuben C. Carlson and John J. Reha, Jr., and Watkins, Lund & Peck by Richard F. Alden, and the defendant represented by his attorneys, Charles P. Moriarty, U. S. Atty., Seattle, Wash., Charles Billinghurst, Asst. U. S. Atty., and Thomas Frazier, attorney, Department of Justice, the Court having considered the Pre-Trial Order, written stipulations of the parties, oral testimony, documentary evidence, oral argument and memoranda and trial briefs of counsel and the Court being fully advised in the premises, makes its Findings of Fact and Conclusions of Law as follows:

Findings of Fact

(1) Plaintiff, H. D. Maxwell is the husband of plaintiff, Josephine E. Maxwell. Plaintiff Oswald Thomas is the husband of plaintiff Harriet S. Thomas. During the years 1952 and 1953 and for many years prior thereto plaintiffs H. D. Maxwell and Oswald Thomas were general partners in Maxwell Petroleum Company, a general partnership. All of the plaintiffs at all times mentioned herein were residents of the Western District of the State of Washington.

(2) Defendant resides in the Western District of the State of Washington and is now and has been since October 31, 1952 the District Director of Internal

Revenue for the State of Washington. Plaintiffs' joint income tax returns for the calendar years 1952 and 1953 were duly filed with and the taxes shown thereon to be due were paid to defendant.

(3) This action is filed pursuant to the provisions of Title 28 U.S.C. § 1340 for the recovery of income taxes and interest thereon collected from plaintiffs by defendant for the calendar year 1953, together with interest thereon from the respective dates of payment. The parties in their Pre-Trial Order have admitted the jurisdiction of this Court.

(4) Prior to August 8, 1952 said partnership, Maxwell Petroleum Company, engaged in the business of a wholesale distributor of petroleum products and automobile accessories in certain counties in the State of Washington. Plaintiff Maxwell's interest in this partnership during the years 1952 and 1953 was 75% and plaintiff Thomas' interest was 25%. Said partnership reported partnership income on an accrual basis and was on a fiscal year ending May 31. Plaintiffs reported their income on a cash basis and were on a calendar year.

(5) On examination of said partnership's income tax return for the fiscal year ending May 31, 1953 the Commissioner of Internal Revenue reclassified certain of said proceeds of a sale as ordinary income and short-term capital gain. Deficiencies in federal income tax were assessed against plaintiffs in accordance with such determinations.

(6) As a result of these determinations, plaintiffs were assessed and on the dates shown paid defendant the following amounts of income tax and interest:

| | Tax | Assessed Interest | Total |
|---|---|---|---|
| Plaintiffs Maxwell October 3, 1957 | $248,874.07 | $52,999.95 | $301,874.02 |
| Plaintiffs Thomas October 23, 1957 | 63,726.40 | 13,784.98 | 77,511.38 |

No part of said taxes or interest has been repaid or credited to plaintiffs or any of them.

(7) On or about May 20, 1958, within the time prescribed by law, plaintiffs duly filed with defendant their respective claims for refund for the calendar year 1953 requesting refund of the total amount of taxes and interest as set forth in paragraph 6 above, plus interest thereon as provided by law. On or about May 26, 1958, within the time prescribed by law, plaintiffs Thomas duly filed with defendant an amended claim for refund for the calendar year 1953 to correct a typographical error in said claim.

(8) Each of said claims for refund set forth the grounds upon which it was based and the grounds upon which this action is based. No claim or any part thereof has been assigned by any of the plaintiffs and plaintiffs are now the respective owners of said claims in their entirety.

(9) By letters dated September 23, 1958 and sent to plaintiffs Maxwell and Thomas, respectively, by registered mail said Commissioner of Internal Revenue rejected said claims for refund in their entirety.

(10) Plaintiff Maxwell started in the business of a wholesale distributor of petroleum products and automobile accessories on or about January 1, 1936 in the State of Washington. This business was conducted under the name of Maxwell Petroleum Company and enjoyed an increasing volume of sales throughout Tacoma, Seattle and other cities of western Washington. In addition, Maxwell Petroleum Company distributed its products in eastern Washington, principally

in the Yakima and Wenatchee areas. On January 1, 1944, at the invitation of General Petroleum Corporation, Maxwell Petroleum Company entered into and signed exclusive wholesale distribution contracts with General Petroleum Corporation to become its wholesale distributor for a period of five years in Pierce County and Thurston County, Washington (hereinafter referred to as the Tacoma and Olympia areas, respectively). As a part of said contracts, Maxwell Petroleum Company transferred at its cost certain valuable stations and accounts located outside of the Tacoma and Olympia areas to General Petroleum Corporation. Maxwell Petroleum Company in turn received valuable accounts and leases on certain stations in the Tacoma and Olympia areas from General Petroleum Corporation. By the terms of said wholesale distributorship contracts these General Petroleum stations and accounts were to be returned to General Petroleum Corporation upon any termination of the wholesale distributorship contracts and are hereinafter referred to as General Petroleum stations and accounts. On or about June 1, 1946, at General Petroleum Corporation's invitation, said distributorship contracts were modified and extended for a period of ten years. Said contracts were to expire by their terms on June 1, 1956. As of the effective date of the sale, said contracts, as extended, each had three years and nine months to run until said expiration date.

(11) Said wholesale distributorship contracts throughout their respective terms as extended, and particularly in 1952, were neither burdensome nor onerous to General Petroleum Corporation. The allowances granted Maxwell Petroleum Company under said wholesale distributorship contracts were less than the average distributorship allowances given by suppliers such as General Petroleum Corporation in 1952 to distributors such as Maxwell Petroleum Company. Maxwell Petroleum Company also had to bear certain expenses such as advertising normally paid by suppliers such as General Petroleum Corporation. There were no disputes or disagreements between Maxwell Petroleum Company and General Petroleum Corporation at any time and their relationship was at all times harmonious. Said wholesale distributorship contracts had no value in 1952.

(12) In 1950 a heart attack was suffered by plaintiff Maxwell and both plaintiff Maxwell and plaintiff Thomas decided to sell their entire business and retire. In 1951, plaintiffs went to General Petroleum Corporation and offered to sell their partnership business to General Petroleum Corporation.

(13) Negotiations over the price to be paid for the Maxwell Petroleum Company business continued between the parties and culminated in the sale by plaintiffs Maxwell and Thomas of their partnership business in its entirety as a going concern to General Petroleum Corporation for a total purchase price of $1,230,247.53, which price included Maxwell Petroleum Company's accounts receivable and inventory at said company's cost. The sale and complete transfer of the entire partnership business was effected by plaintiffs with the exception of cash, two automobiles and two service stations which were not devoted to partnership business or to the sale of General Petroleum Corporation products. The partnership immediately discontinued its operation of the partnership business and plaintiffs Maxwell and Thomas retired from business and have been retired at all times since. General Petroleum Corporation thereafter operated and retained said business. The sale made by plaintiffs Maxwell and Thomas to General Petroleum Corporation was of their partnership interests. Said plaintiffs each owned his respective partnership interest for more than six months prior to the time of sale.

(14) Excluding inventory and accounts receivables which aggregated $284,088.21, and excluding the so-called General Petroleum stations and accounts, the Maxwell Petroleum Company business had a fair market value of not less

than $1,073,680.63 as of August, 1952. There exists in the petroleum industry and existed in 1952 a commonly accepted method of valuing a wholesale distributor's business. This method was used along the West Coast and particularly in Northwestern Washington and was the method which was properly applied to determine said fair market value of Maxwell Petroleum Company. Said method consists of appraising the physical facilities such as fee owned stations, trucks and furniture and fixtures, allowing one cent to three cents per gallon for gasoline sold, five cents or more per barrel for fuel oil sold, one-half cent or more per gallon for heating or diesel oil sold and 10% on lubricating oils and accessories. The amounts per gallon, per barrel and commission on lubricating oils and accessories are then multiplied by the number of gallons or barrels or dollar amount sold per year and then by the number of years which it is estimated the business will continue. A conservative estimate which is and was customary in the petroleum industry is six to eight years for an established business to continue after the purchase. The Maxwell Petroleum Company was an established business and had been serving its stations and accounts on an average of more than seven years.

(15) Incidental to the sale of the going partnership business said wholesale distributorship contracts were terminated but no part of the consideration received by plaintiffs Maxwell and Thomas was paid for the cancellation of said contracts as such.

(16) Said sale of the Maxwell Petroleum partnership business as a going concern involved the transfer to General Petroleum Corporation by plaintiffs of Maxwell Petroleum Company's parcels of real property, Maxwell Petroleum Company's leases and accounts and Maxwell Petroleum Company's contracts and agreements covering stations and accounts. An escrow was opened to facilitate the transfer and many instruments and documents of conveyance were required to complete said transfer. Approximately twenty-three employees were also transferred and all but one are still working for General Petroleum Corporation. In addition, all of the various office equipment, files, books and records necessary to carry on the business conducted by the partnership were transferred to General Petroleum Corporation. All of the assets which were transferred to General Petroleum Corporation and on which gain was realized had been held by plaintiffs for more than six months prior to the time of sale.

(17) On January 1, 1944 and at all times thereafter to and including the date of sale of the partnership business to General Petroleum Corporation, Maxwell Petroleum Company had a well established petroleum distributorship business and had substantial capital invested in said business.

(18) The fair market value of assets to which no specific portion of the purchase price was allocated but which were transferred by plaintiffs to General Petroleum Corporation under paragraph I(e) of the purchase and sale agreement of August 8, 1952, was in excess of $552,-893, without regard to the wholesale distributor contracts mentioned therein.

(19) The true intent of the parties and the substance of the transaction of August 8, 1952 was to buy and to sell said partnership business in its entirety as a going concern. Since the completion of the transfer of said business, General Petroleum Corporation has continued to maintain and to operate substantially all of said business to the present date.

(20) On their joint income tax returns for the calendar year 1953 the plaintiffs properly reported the gain realized from said sale as long-term capital gain in the amount of $601,708.10 for plaintiffs Maxwell and $200,569.39 for plaintiffs Thomas.

(21) Defendant illegally, erroneously and wrongfully collected from plaintiffs H. D. Maxwell and Josephine E. Maxwell as and for income taxes for the year 1953 the sum of $248,874.07 and as and for interest thereon the sum of $52,999.95, or a total of $301,874.02, all of which was

paid to defendant on October 3, 1957 and defendant illegally, erroneously and wrongfully collected from plaintiffs Oswald Thomas and Harriet S. Thomas as and for income taxes for the year 1953 the sum of $63,726.40 and as and for interest thereon the sum of $13,784.98, or a total of $77,511.38, all of which was paid to defendant on October 23, 1957.

(22) Every conclusion of law herein which is deemed to be a fact is hereby found as a fact and incorporated herein as a finding of fact.

## Conclusions of Law

(1) The Court concludes in all respects as set forth in the foregoing Findings of Fact.

(2) Said Findings of Fact having been made upon these issues which are determinative of the cause, any further finding or findings upon issues other than those embraced in the foregoing Findings of Fact would be immaterial and are not made for that reason.

(3) This Court has jurisdiction of the subject matter and of the parties to this action pursuant to Section 1340 of Title 28 of the U.S.C.

(4) Plaintiffs sold and transferred to General Petroleum Corporation capital assets which plaintiffs had held for more than six months prior to the time of sale and plaintiffs are entitled to compute their entire gain on said sale as long-term capital gain under the provisions of Section 117 of the Internal Revenue Code of 1939, 26 U.S.C. § 117.

(5) Defendant is liable to plaintiffs as follows:

(a) to plaintiffs H. D. Maxwell and Josephine E. Maxwell for the sum of $301,874.02, together with interest thereon at the rate of six per cent (6%) per annum from October 3, 1957 as provided by law;

(b) to plaintiffs Oswald Thomas and Harriet S. Thomas for the sum of $77,-511.38, together with interest thereon at the rate of six per cent (6%) per annum from October 23, 1957 as provided by law;

(c) for the costs of suit, to be taxed by the Clerk of this Court.

(6) Every Finding of Fact deemed to be a Conclusion of Law is hereby determined as a matter of law.